## 34993. STATE MEDICAL EDUCATION BOARD OF GEORGIA v. WILLIAMS.

PER CURIAM.

This case is here on certiorari. *Williams v. State Medical Education Bd. of Ga.*, 149 Ga. App. 444 (254 SE2d 450) (1979).

In 1969, David Adams Williams signed a scholarship loan agreement with the State Medical Education Board, borrowing $4,500 in three installments. The money was to help defray the costs of Williams' education at the Medical College of Georgia. After graduation and after completing his internship and residency, Dr. Williams was to repay the loan in cash or by practicing his profession at a place within Georgia approved by the board. According to the law and the contract, "one-fifth of the total scholarship, together with the interest thereon, will be credited to the applicant for each year of practice when he has practiced his profession for three years in a community of 10,000 or less according to the United States 1960 census. . ." Ga. L. 1968, p. 1686.

At the outset it should be noted that, according to the United States 1960 census, the City of Smyrna had a population of 10,157 (its 1970 population was 19,157).

Upon his graduation from the Medical College, the doctor was approved by the State Medical Education Board to take an anesthesiology residency at Grady Hospital in Atlanta from 1972 to 1975. On April 4, 1975, the board wrote to the doctor sending a list of towns in Georgia in need of physicians, and requesting that he inform the board by June 15, 1975, of his plans if he chose to repay the loan by practicing in a town of less than 10,000 population. On October 3, 1975, the board again wrote the doctor, referring to a July, 1975, telephone conversation in which the doctor had informed the board

that he was working for the summer at South Fulton Hospital and would advise the board when his plans for practice had been completed. The letter stated that the board had learned that the doctor had established a full time practice in Atlanta, and therefore the board formally requested payment of the loan plus interest by November 30, 1975.

On November 28, 1975, two days before the November 30 deadline, the doctor wrote to the board that he was in compliance with his 1969 contractual obligation because, although his office had an Atlanta mailing address, he really was in practice in "rural Smyrna" in an office park. He asserted that Smyrna in the 1960 United States census had a population of "approximately 10,000" and was thus qualified to be a town meeting the census criterion. He argued that he was available to serve patients in Acworth, Austell, Dallas, Douglasville, Hiram, Kennesaw, Lithia Springs, Mableton, Powder Springs, Roswell and Tucker by answering service and radio pagers. In April, 1976, the board met to consider the "request" of the doctor to practice in Smyrna and unanimously voted to disapprove it due to its close proximity to the City of Atlanta and the high physician population in the area. The doctor says he did not receive a letter from the board dated April 27, 1976, informing him of their decision until a copy was remailed in a letter from the board dated July 9, 1976. Together, these two letters informed the doctor that he was not in compliance with the contract and that after July 31, 1976, his account would be referred to the Attorney General for collection.

On July 29, 1976, two days before the July 31 deadline, the doctor again wrote the board, claiming that practicing medicine in the Smyrna area qualified him under the service/repayment provisions of the 1969 contract, Smyrna having a 1960 population of 10,053. He stated that his office was centrally located to both I-75 and I-285 and served patients in rural Cobb County. He further asserted that he was considering opening an additional office in Powder Springs, a city on the board's current "approved list." On September 23, 1976, the doctor's attorney wrote to the board stating that the doctor believed that by practicing in Smyrna he was in

compliance with the contract and requesting a hearing before the board. On September 27, 1976, the board responded by letter, advising the doctor's attorney that the matter previously had been referred to the Attorney General for collection.

In December, 1976, the board brought this action to recover the principal plus interest on the loan. In January of 1978, the board's motion for summary judgment was granted on the affidavits and exhibits of the parties. The Court of Appeals reversed, holding, among other things, that a genuine issue of material fact existed as to the location and the demographic characteristics of the community ("rural Smyrna") where the doctor chose to practice. *Williams v. State Medical Education Bd. of Ga.,* supra. We granted certiorari to review Division 1 of the Court of Appeals decision.

On the record in the trial court the grant of the motion for summary judgment was proper. The purpose of the medical scholarship loan program is to enable deserving students to obtain state financial assistance to permit them to attend medical school and become doctors by agreeing to provide medical services in sparsely populated areas where such services are needed. To allow such a doctor to set up practice outside a city which city does not meet the requirements of the law and claim that he is in a rural community defeats the purpose of the statute creating scholarship loans.

The board's letter dated April 27, 1976, explains that the reasons for the denial of the doctor's request for approval of his Smyrna office were the close proximity to the City of Atlanta and the high population of physicians in the Smyrna area. To fulfill his contract, the doctor was required to practice in a community of 10,000 population or less, according to the United States Census of 1960, not in a community of over 10,000. Smyrna was a community of greater than 10,000 population according to the 1960 census. The terms of the contract were not fulfilled. The board was not required to waive the requirements of the contract imposed by law, nor was it required under these circumstances to hold a hearing before declaring the contract to be due and payable in cash. Thus, the board's motion for summary judgment was properly granted by

the trial court.

*Judgment reversed. All the Justices concur, except Hill, J., who dissents.*

ARGUED JULY 9, 1979 — DECIDED SEPTEMBER 27, 1979.

*Cotton, Katz, White & Palmer, J. Michael Lamberth,* for appellant.
*Richard E. Thomasson,* for appellee.